[File No. 6205.]

JOHN G. NESS, Appellant, v. CITY OF FARGO, a Municipal Corporation, Respondent, and M. A. HILDRETH, Intervenor.

(251 N. W. 843.)

232 

Opinion filed December 18, 1933.

*M. A. Hildreth,* for appellant and intervenor.

*Matthew Murphy,* for respondent.

CHRISTIANSON, J. The plaintiff brought this action to recover salary as city assessor for the period between August 10, 1931, and November 4, 1931. The material and undisputed facts are substantially as fol-. lows: In 1929 the plaintiff Ness was appointed assessor of the city of Fargo. On April 21, 1931, he was reappointed for a term of two years, Comp. Laws 1913, § 3614. The salary of the city assessor was fixed at $2,200.00 per annum. The plaintiff duly qualified by taking and filing an oath of office and an official bond and continued to discharge the duties of the office of city assessor. On August 5, 1931, certain charges were filed against him and on August 10, 1931, the city commission of the city of Fargo adopted a resolution based upon such charges purporting to "discharge" the plaintiff Ness from his office. The resolution directed Ness forthwith to surrender to the city auditor all property in his possession belonging to the city and all records or papers compiled or used by him in connection with his office. The city commission at the same meeting adopted a resolution that "Ella Bendickson be appointed acting city assessor pending the appointment of a city assessor." The plaintiff was excluded from his office and was not permitted to perform any of the duties thereof. He immediately

instituted a proceeding in the district court of Cass County for a review of the action of the city commission with the result that the action of the city commission removing the plaintiff from office was held to be void and was set aside. An appeal was perfected from this decision, and this court sustained the ruling of the district court and held that the order of removal was null and void. State ex rel. Ness v. Fargo, 63 N. D. 33, 245 N. W. 887. On October 30, 1931, after the decision of the district court had been rendered, charges were again presented against the plaintiff Ness and hearing was had thereon before the city commission on November 3, 1931, and on that day the city commissioners entered an order removing the plaintiff Ness from office. The validity of such order of removal was upheld, first, by the district court and, again, on appeal by this court. State ex rel. Ness v. Fargo, 63 N. D. 85, 246 N. W. 243.

The question in this case is the right of the plaintiff to recover salary during the time that he was excluded from his office by virtue of the void order of discharge or removal entered August 10, 1931.

The question thus presented is one on which there is a square conflict in the authorities, and frequently a lack of harmony in the adjudicated cases even in the same jurisdiction. Generally speaking there are two rules. One is to the effect that if a person is illegally excluded or suspended from office and a *de facto* officer occupies and performs the duties of such office for a time, and the salary is actually paid to the *de facto* officer up to the time of the restoration of the *de jure* officer, the *de jure* officer cannot recover the salary during the period of his wrongful exclusion. The other rule is to the effect that a *de jure* officer who is wrongfully excluded from his office, upon his restoration, is entitled to recover the salary incident to his office during the time that he was wrongfully excluded although during the time of such exclusion the office was occupied by a *de facto* officer who performed the duties thereof and was paid the salary.

The first rule is sustained by the greater number of adjudicated cases. Both rules invoke, and purport to give effect to, the principle of public policy. The contrariety in the adjudicated cases is indicative that the question is one of difficulty, and that powerful arguments may be advanced in support of either of the two rules. We have carefully considered both and the reasons announced by the various courts for their

adoption and application and have come to the conclusion that the second rule, while adopted only by a minority of the courts, is more in accord with the principles of logic and gives voice to a public policy that is more in accord with the fundamental principles of our jurisprudence than does the so-called majority rule.

The salary of a public official is an incident to the office and the legal right to receive or enforce the payment thereof goes with the legal title to the office. This principle is not denied by any of the authorities. Even the cases which deny to a *de jure* officer the right to recover salary during the time such officer has been excluded from the office, where the salary has been paid to a *de facto* officer who has performed the duties of the office during the time of exclusion, recognize that the *de facto* officer has no legal right to the salary. They all admit that notwithstanding he has performed the duties of office, he may not sue and recover pay for the services which he has performed. And these authorities, almost unanimously, hold that if the salary has not been paid to the *de facto* officer the *de jure* officer may recover; or if it has been paid to the *de facto* officer the *de jure* officer may recover it from him.

In short, the very authorities which deny to a *de jure* officer the right to recover salary where the salary has been paid to a *de facto* officer recognize that the *de facto* officer has no legal right either to recover or to retain the salary if it has been paid, but that the legal right thereto is in the *de jure* officer. Hence, the majority rule is clearly illogical. It can be justified if at all only on the ground of public policy, for the rule applied therein has never been applied to any other claim against a state or municipality. If payment is made by the state or a municipality of a claim for services rendered, or for goods furnished to a person who is not entitled to such payment, it does not constitute a bar to the right of the person lawfully entitled thereto to recover the same. The illogical basis of the majority rule was well pointed out in Freeman's note to Andrews v. Portland, 10 Am. St. Rep. 280. He said:

"These decisions have been placed partly upon the ground that the officer *de jure* had no property rights in the office, and partly upon the ground that his right to the salary or emoluments of his office was not dependent upon the office, but upon the actual performance of his

services as a public official; and, further, that while there was an officer *de facto* in actual possession of the office, the disbursing officers were not entitled to consider the question of who ought to be in such possession, nor to question the title in any other way than by a proceeding in *quo warranto*. It is believed that none of these grounds are well taken, and most courts which yet maintain the general rule have substantially admitted in subsequent cases that the grounds for it did not in fact exist.

"In the first place, it is now well settled that an officer *de facto* is not entitled to the salary of the office, and that although he may faithfully discharge its duties, he cannot maintain any action against the city or county for the compensation to which he would be entitled if he were an officer *de jure*: McCue v. Wapello County, 56 Iowa, 698, 10 N. W. 248, 41 Am. Rep. 134; Matthews v. Copiah County, 53 Miss. 715, 24 Am. Rep. 715; Dolan v. New York, 68 N. Y. 274, 23 Am. Rep. 168. In the next place, if he has in fact received the emoluments of the office, he has no right whatever to retain them, and he may be compelled to account therefor to the officer *de jure,* in any appropriate form of action: Douglass v. State, 31 Ind. 429; Lawler v. Alton [Ir. Rep. 8 C. L. 160]; Mayfield v. Moore, 53 Ill. 428, 5 Am. Rep. 52; Board of Auditors v. Benoit, 20 Mich. 176, 4 Am. Rep. 382; Rule v. Tait, 38 Kan. 765, 18 P. 160; Bier v. Gorrell, 30 W. Va. 95, 3 S. E. 30, 8 Am. St. Rep. 17; Glascock v. Lyons, 20 Ind. 1, 83 Am. Dec. 299; People ex rel. Benoit v. Miller, 24 Mich. 458, 9 Am. Rep. 131; Hunter v. Chandler, 45 Mo. 452; United States use of Crawford v. Addison, 6 Wall. 291, 18 L. ed. 919; State v. Tate, 74 N. C. 131 [State ex rel. Howerton v. Tate, 70 N. C. 161]. If a judgment of ouster has been entered against an officer *de facto,* and salary is thereafter paid to him, the officer *de jure* may maintain an action therefor against the city or county, notwithstanding such payment: McVeany v. New York, 80 N. Y. 185, 36 Am. Rep. 600. If no part of the salary has been paid during the incumbency of an officer *de facto,* the officer *de jure,* although he performed none of the duties of the office, may maintain an action against the city and county for the salary and emoluments thereof: Dolan v. New York, 68 N. Y. 274, 23 Am. Rep. 168; Comstock v. Grand Rapids, 40 Mich. 397.

"If it is true, as must be admitted, that an officer *de jure,* although

he performs none of the duties of the office, may maintain an action against the officer *de facto* for fees or salary actually collected by him, or against the city or county, for salary accruing during the incumbency of the officer *de facto,* but not in fact paid to him, then it must be that the officer *de jure* has some property rights in the emoluments of the office, and that these rights are not dependent upon his performance of its duties, but upon his title to the office, and it is difficult to understand how the wrongful payment of his salary to a person not entitled to receive it can, in any respect, impair his right to recover it, as though no payment whatever had been made. Hence the principal case, and cases in California and Tennessee, maintain the doctrine against the weight of authority, but in harmony, we think, with judicial principles, that the payment of the salary to an officer *de facto* in no way impairs the right of the officer *de jure* to recover such salary from the city, county, or other public body charged with the duty of making its payment."

Nor do we believe that the principle of public policy warrants or requires the adoption of the majority rule. Public policy means the public good. It is "that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." See, Words and Phrases, 2nd ed. It is difficult to see where any public good can be subserved by the denial to a public officer of the right to that compensation which the law says he is legally entitled to receive because that compensation has been paid to someone who was not entitled to receive it; and who, if he has received it, is not entitled to retain it. It may be true that a *de jure* officer who has been excluded from office should be held to a stricter standard of conduct in order to be in a position to insist upon his legal right to salary where the office has been occupied by a *de facto* officer who has received payment for the services performed than in other classes of cases and that the principles of waiver and estoppel may be applied as against a *de jure* officer in circumstances where they might not be applied in other cases; but where, as in this case, a *de jure* officer in no manner acquiesces in the illegal removal or in the occupancy of the office by the usurper, but on the other hand manifests a determination to vindicate and claim his right to the office, it is difficult to see by what reasoning public policy can be said to justify a

denial of his right to the compensation which goes with the office which he has been chosen to occupy. On the contrary, we are persuaded there are stronger reasons of public policy in support of the rule that a *de jure* officer may not be denied his right to salary because a *de facto* officer has received salary during the time the *de jure* officer was excluded from office and prevented from performing the duties thereof. In the case of Board of Auditors v. Benoit, 20 Mich. 126, 4 Am. Rep. 382, the distinguished jurist, Judge Cooley, in his dissenting opinion asserted that such rule was "sustainable on the soundest reason of public policy."

"A wrong is done," said Judge Cooley, "to society and to public order in every instance in which the usurpation of a public officer takes place; and the rules of law ought to be such as to give the greatest possible discouragement to such a proceeding. The county authorities, in a case like this, ought not to be told that they may countenance the intrusion with impunity, and deliver over to a usurper the emoluments of an office to which he has neither a legal nor a moral claim. Such a rule encourages usurpations, and tends to lower the standard of public morality. Public policy requires that municipal officers should be allowed to sanction or recognize the intrusion only so far as may be necessary to give the public the full benefit of protection which the rule regarding the acts of officers *de facto* was designed to afford."

We therefore reach the conclusion that the plaintiff in this case is entitled to recover salary for the period of time in question. While, as said, we are aware that this is contrary to the weight of authority, we are of the opinion that the rule thus announced is the sounder one. The rule which we adopt is supported, among others, by the following decisions: Tanner v. Edwards, 31 Utah, 80, 86 P. 765, 120 Am. St. Rep. 919, 10 Ann. Cas. 1091; Rasmussen v. Carbon County, 8 Wyo. 277, 56 P. 1098, 45 L.R.A. 295; Ward v. Marshall, 96 Cal. 155, 30 P. .1113, 31 Am. St. Rep. 198; United States v. Wickersham, 201 U. S. 390, 50 L. ed. 798, 26 S. Ct. 469; Cleveland v. Luttner, 92 Ohio St. 493, 111 N. E. 280, Ann. Cas. 1917D, 1134.

The record on this appeal indicates that the plaintiff has executed assignments to two different parties. It does not appear that there is any controversy between the plaintiff and the assignees or either of .them; and no issue has been raised making it necessary or even proper

for this court to consider the assignments or the effect thereof on this appeal. They do not affect the principal question at issue, namely, the right of the plaintiff to recover salary during the period that he was illegally excluded from office. However, the final judgment herein should be made in light of the rights of the assignees. Accordingly the judgment appealed from is reversed and the cause is remanded for further proceedings conformable to law and with permission to bring in additional parties if that is found to be necessary.

BURR, Ch. J., and NUESSLE, BURKE and MOELLRING, JJ., concur.